UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

JEFFREY S. FAGNER,

                    Plaintiff,        **14-cv-6569**

                                      **DECISION AND**
                                      **ORDER**

          -vs-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

                    Defendant.

───────────────────────────────


     Plaintiff Jeffrey S. Fagner ("plaintiff") brings this action

pursuant to Title II of the Social Security Act (the "Act"),

seeking review of the final decision of the Commissioner of Social

Security ("defendant" or "the Commissioner") denying his

application for social security disability insurance benefits

("DIB").  Presently before the Court are the parties' competing

motions for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure.  For the reasons set forth below,

plaintiff's motion is denied and defendant's motion is granted.

                    PROCEDURAL HISTORY

     On December 12, 2011, plaintiff filed an application for DIB,

alleging disability as of September 23, 2010.  Administrative

Transcript ("T.") 135-41. Following the denial of his application,

───────────────────────

    [1]

Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social
Security on January 23, 2017.  The Clerk of the Court is instructed to amend the
caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect
the substitution of Acting Commissioner Berryhill as the defendant in this
matter.

a hearing was held at plaintiff's request on April 20, 2012, before administrative law judge ("ALJ") William M. Manico, at which testimony was given by plaintiff and a vocational expert ("VE"). T. 34-62. The ALJ issued a decision dated December 26, 2012, in which he determined that plaintiff was not disabled as defined in the Act. T. 9-28.

In applying the required five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA") (*see* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. 2008) (detailing the five steps)), the ALJ made the following findings, among others: (1) plaintiff met the insured status requirements of the Act through December 31, 2016; (2) plaintiff had not engaged in substantial gainful activity since September 23, 2010; (3) plaintiff's degenerative disc disease of the cervical spine and lumbar spine and mild tendinopathy of the left shoulder/adhesive capsulitis status post-surgery were severe impairments; (4) plaintiff's impairments did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (5) plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a)" with the following limitations: occasional balancing, climbing, stooping, crouching, kneeling, and crawling; alternate sitting and standing every 20 to 25 minutes; never reach overhead with the left upper extremity; use a cane to ambulate; avoid

moderate exposure to extremes of cold, heat, wetness, or humidity; avoid all exposure to hazards; perform unskilled work involving simple instructions; regular work breaks approximately every 2 hours; (6) plaintiff was unable to perform any past relevant work; and (7) considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff could perform.

The ALJ's decision became the final determination of the Commission on August 6, 2014, when the Appeals Council denied plaintiff's request for review. T. 1-6. Plaintiff subsequently filed the instant action.

## DISCUSSION

### I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by "substantial evidence" in the record. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind

3

might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions were based upon the correct legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir.2003).

**A. Summary of relevant medical evidence.**

Plaintiff's primary care physician is Dr. Kristina Cummings. On February 6, 2009, plaintiff saw Dr. Cummings at the recommendation of his therapist. T. 310. Plaintiff reported feeling very depressed and noted that he had been drinking heavily, but had stopped since January 1st. *Id.* On physical examination, plaintiff showed a flat affect, but was otherwise unremarkable. *Id.* Dr. Cummings assessed plaintiff with depression and prescribed Cymbalta. *Id.*

Plaintiff followed up with Dr. Cummings regarding his depression on March 18, May 7, July 2, and July 30. T. 306-209. On November 12, 2009, Plaintiff was seen by Dr. Cummings and

reported having "crashed mentally" five days prior. T. 301. He stated that his job was in jeopardy from having missed so many days and reported "momentary" thoughts of self-harm. *Id*. Dr. Cummings assessed plaintiff with major depression with an acute episode. *Id*. She made him an appointment the following day with a social worker and encouraged him to stay with a friend. *Id*. Dr. Cummings wrote plaintiff a note to be out of work from November 6th to the 23rd so that he could work on his mental health. T. 302.

Plaintiff returned to Dr. Cummings on November 23, 2009, and reported that he was feeling better with his depression, but that his work was very stressful and exacerbating his mental health concerns. T. 300. Apart from flat affect, plaintiff's physical examination was unremarkable. *Id*.

Plaintiff attended inpatient rehabilitation for alcohol, cocaine, and marijuana dependence from December 16, 2009, to January 6, 2010. T. 202-40. On discharge, plaintiff was assessed with alcohol dependence, cannabis dependence, cocaine dependence, nicotine dependence, major depression with anxiety, personality disorder NOS, and GERD. T. 202. Plaintiff had a GAF score of 34. *Id*. Plaintiff's prognosis was fair. T. 207.

Plaintiff saw Dr. Cummings on January 21, 2010, to follow up after his inpatient rehabilitation. T. 298. Plaintiff reported that he had begun having pain in his left hip, radiating down his left buttocks and into his leg. *Id*. Plaintiff stated that sitting and driving hurt and that standing and laying down helped. *Id*.

Plaintiff reported having been diagnosed with an enlarged disc in his back in 2002. *Id*. Dr. Cummings assessed plaintiff with left sciatica with possible disc disease. *Id*. She instructed him to take ibuprofen for 7-10 days, and then on an as-needed basis, and to stretch and place warm compresses on the area. *Id*.

On February 25, 2010, plaintiff returned to Dr. Cummings, complaining of left wrist pain. T. 296. Plaintiff reported that he had been working out at home, doing sit-ups, pull-ups, and lifting weights. *Id*. Plaintiff told Dr. Cummings that his lower back was still bothering him and that ibuprofen did not help the pain. *Id*. Dr. Cummings assessed plaintiff with left wrist pain and sciatica. T. 297.

On March 5, 2010, a magnetic resonance imaging study ("MRI") of plaintiff's lumbar spine revealed mild disc bulging at L4-5 and L5-S1, but no significant herniation. T. 318-19.

Plaintiff followed up with Dr. Cummings on March 25, 2010. T. 294. He continued to report nerve pain. *Id*. On physical examination, he had tenderness in the lower spine and showed discomfort with flexion, abduction of the hip, and straight leg lift, though he was able to complete all of them. *Id*. Dr. Cummings prescribed Lortab, diclofenac, and gabapentin. *Id*.

On June 15, 2010, plaintiff began treating with pain management specialist Dr. Ashraf Sabahat. T. 364-65. On physical examination, plaintiff exhibited significant tenderness with deep palpitation over his right sacroiliac joint and no tenderness with

deep palpitation over the left sacroiliac joint. T. 364. Straight left raise tests were negative and plaintiff did not demonstrate any weakness in any other muscle groups in his lower extremities. *Id*. Dr. Sabahat noted that the severity of the symptoms reported by plaintiff did not correlate with his MRI findings. T. 365. Dr. Sabahat recommended an epidural steriod injection and prescribed Lyrica, Naprelan, and Darvocet-N. *Id*.

Plaintiff continued to treat with Drs. Cummings and Sabahat throughout the relevant time period. On July 12, 2010, plaintiff received a caudal epidural steroid injection, which he tolerated well. T. 362. That same day, plaintiff saw Dr. Sabahat, who changed his prescription for Darvocet to one for oxycodone. T. 361. On palpation, plaintiff showed mild tenderness over the right sacroiliac joint and severe tenderness over the left side. *Id*. Straight leg tests were negative in his lower extremities. *Id*.

An MRI of plaintiff's lumbar spine was performed on August 19, 2010. T. 318-19. The results were unchanged from the March 2010 MRI. T. 358. Dr. Sabahat referred plaintiff to neurosurgeon Dr. Shakeel Durrani for consultation. *Id*.

Dr. Durrani saw plaintiff on September 8, 2010. T. 262-63. Dr. Durrani noted that plaintiff had "mild disc degeneration at L4-L5" and that his MRI was otherwise normal. T. 263. Dr. Durrani opined that plaintiff's "clinical symptoms do not correlate with his radiological studies" and that there was no indication for

surgical intervention. *Id*. Dr. Durrani further opined that it was "possible that there might be an underlying psychological issue" and recommended that plaintiff follow up with his primary care physician. *Id*. Dr. Sabahat subsequently asked Dr. Cummings to send plaintiff for a psych assessment as recommended by Dr. Durrani. T. 355.

On September 23, 2010, plaintiff saw Dr. Cummings and suggested that his pain might be attributable to a neck injury he suffered as a child. T. 287. Dr. Cummings ordered x-rays of plaintiff's hips and neck, which were performed on September 24, 2010 and were normal. T. 320, 542.

Plaintiff saw Dr. Sabahat on October 11, 2010. T. 354. Dr. Sabahat indicated that he was going to send plaintiff to another neurosurgeon for a second opinion. *Id*. He also reiterated that he intended to send plaintiff for psych assessment as soon as he got permission from Dr. Cummings. *Id*. It is not clear from the record whether Dr. Cummings ever gave such permission.

On November 8, 2010, nerve conduction and electromyelogram studies were negative for radiculopathy. T. 340-41.

Plaintiff saw Dr. Cummings on December 2, 2010, and expressed frustration with his pain management. T. 282-84. Dr. Cummings noted that plaintiff had refused to see another pain management specialist as she had recommended. T. 282. On December 30, 2010, plaintiff suggested to Dr. Cummings that he begin using a cane.

T. 280.  Dr. Cummings recommended that plaintiff see another neurosurgeon, a neurologist, and a chiropractor.  T. 281.

On January 7, 2011, plaintiff presented at the emergency room at Schuyler Hospital complaining of pain in his left lower extremity.  T. 241-43.  His physical examination was normal.  T. 242.  Plaintiff was assessed with chronic pain in the lower left extremity and discharged with a prescription for Torodol.  T. 243.

Plaintiff received an epidural steroid injection in his spine on January 11, 2011.  T. 352-53.  He reported to Dr. Cummings that the injection had worked only for a few hours.  T. 278-79.  He further reported that he had decided to use a cane.  T. 278.

Lumbar x-ray, myelogram, and post-myelogram lumbar CT scans of plaintiff were performed on March 8, 2011 and were normal.  T. 245-47, 315-17, 368-70.

On April 29, 2011, plaintiff saw neurologist Dr. Ziad Rifai.  T. 255-59.  On physical examination, plaintiff had antalgic gait but was otherwise normal.  T. 256.  EMG and nerve conduction studies were normal.  T. 256-59.  Dr. Rifai opined that "[t]here is no neurologic explanation for [plaintiff's] pain and sensory symptoms" and that "[t]he possibility of somatization[2] associated with depression should be considered."  T. 256.

---

[2]

Somatization is "the expression of mental phenomena as physical (somatic) symptoms."  *Merck Manual, Professional Version*, "Overview of Somatization," https://www.merckmanuals.com/professional/psychiatric-disorders/somatic-symptom-and-related-disorders/overview-of-somatization (last accessed May 26, 2017).

An MRI of plaintiff's cervical spine on May 31, 2011 showed left posterior disc herniation at C5-C6 with no visible impingement. T. 313-14, 366-67. Additional epidural steroid injections were performed on June 8, 2011, June 28, 2011, August 2, 2011, and August 17, 2011. T. 347-48. Plaintiff reported varying levels of relief from these injections.

Plaintiff returned to Dr. Durrani on August 21, 2011. T. 260-61. On physical examination, the only abnormalities were cane use and reduced left shoulder motion. T. 260. Dr. Durrani opined that there was "no correlation between [plaintiff's] clinical and radiological picture" and encouraged him to seek a second opinion. *Id.*

On December 1, 2011, Dr. Cummings completed a Medical Examination for Employability form. T. 267-68. Dr. Cummings assessed plaintiff with no limitations regarding the use of his hands, seeing, hearing, speaking, understanding and remembering simple instructions, interacting appropriately with others, maintaining socially appropriate behavior, maintaining basic standards of grooming and hygiene, making simple decisions, and performing simple tasks. *Id.* She assessed plaintiff with some limitations regarding understanding and remembering complex instructions, maintaining concentration and attention when depressed, and using public transportation when in pain, and severe limitations with walking, sitting, standing, lifting/carrying, pushing/pulling, bending/squatting, and climbing stairs. *Id.*

Dr. Cummings opined that plaintiff could not work because he required constant position changes. *Id*.

Dr. Cummings authored a letter dated February 2, 2012, in which she acknowledged that "[plaintiff's] past findings do not correlate with his physical objective findings." T. 322. She went on to opine that standing for more than 30 to 60 minutes caused plaintiff excruciating pain and numbness down the back of his leg, and that he had seemed to be in pain when seen in her office. *Id*. Dr. Cummings further opined that it would be unsafe for plaintiff to return to his prior work as an electrician. *Id*.

Plaintiff was seen by consultative psychologist Kavitha Finnity, Ph.D., on February 3, 2012. T. 325-28. Plaintiff reported headaches, left arm pain, and leg pain. *Id*. He also reported depressive symptoms, including difficulty sleeping and loss of appetite. T. 325. Plaintiff stated that he cared for his personal needs, did laundry, shopped, drove, socialized with friends, read, and played video games. T. 327. Dr. Finnity opined that plaintiff could follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, and make appropriate decisions. *Id*. Plaintiff had difficulty relating with others and dealing with stress. *Id*. Dr. Finnity diagnosed plaintiff with major depressive disorder, anxiety disorder NOS, polysubstance abuse in sustained remission, chronic pain, and headaches. *Id*. His prognosis was fair. *Id*.

Also on February 3, 2012, plaintiff was seen by consultative physician Dr. Harbinder Toor. T. 330-34. Plaintiff reported constant lower back pain and left shoulder pain. T. 330. Plaintiff further reported that he had headaches daily. *Id*. Plaintiff told Dr. Toor that he did not clean, cook, perform childcare, play sports, or engage in hobbies. T. 331. He stated that he did dress himself, do laundry, shop, shower, socialize with friends, read, watch television, and listen to the radio. *Id*. On examination, plaintiff reported moderate pain. *Id*. Plaintiff could rise from a chair without difficulty but had trouble changing for the exam and getting on and off the examination table. *Id*. Neurological findings were normal apart from numbness and tingling in the left extremities. T. 332. Straight leg test was positive and plaintiff had reduced flexion, extension, lateral flexion of the cervical and lumbar spines, along with reduced flexion and extension of the left knee and reduced forward flexion, abduction, and external and internal rotation of the left shoulder. *Id*. Plaintiff had slightly reduced (4/5) grip strength with his left hand and no deficits with respect to his right hand. T. 333. Dr. Toor assessed plaintiff with history of chronic low back pain, history of left shoulder pain, and history of headaches. *Id*. Plaintiff's prognosis was guarded. *Id*. Dr. Toor opined that plaintiff had moderate to severe limitations for standing, walking, squatting, heavy lifting, pushing, pulling, and reaching with the left shoulder. *Id*. Plaintiff had moderate limitations on sitting

for a long time and mild limitations for grasping and holding with the left hand, twisting, bending, and extending the cervical spine. *Id*.

On February 6, 2012, Dr. Sabahat completed a questionnaire related to plaintiff. T. 335-38. Dr. Sabahat declined to answer several questions on this questionnaire, including whether the pain affected plaintiff's activities of daily living and whether the physical findings were consistent with plaintiff's level of pain. T. 337. Dr. Sabahat reported that plaintiff had constant pain brought on by activity and that he was taking Dilauded, which provided "some" relief for approximately four hours. T. 335-36.

On March 8, 2012, Dr. Cummings recommended that plaintiff see another neurosurgeon. T. 513. On March 20, 2012, plaintiff reported to Dr. Sabahat that he had seen a second neurosurgeon, Dr. Zuprak, who had also declined to offer any surgical intervention. T. 480.

On March 21, 2012, plaintiff saw orthopedic surgeon Dr. James Mark regarding his shoulder pain. T. 423-34. Dr. Mark ordered a shoulder MRI, which was performed on March 25, 2012 and showed mild to moderate tendinopathy of the supraspinatus without any discrete tear. T. 425. Dr. Mark ordered physical/occupational therapy, which plaintiff began on March 30, 2012. T. 492.

An MRI of plaintiff's cervical spine on April 16, 2012 was normal. T. 432, 483. An MRI of plaintiff's lumbar spine on April 17, 2012 showed minimal degenerative disc disease with

minimal posterior bulges from L3-L4 and L5-S1, with mild neural foaminal narrowing on the left at L3-L4 and L4-L5. T. 431, 482. There was no progression or significant interval change in the appearance of plaintiff's lumbar spine from the previous studies. *Id*. Dr. Sabahat opined that these studies were essentially negative. T. 479. Dr. Sabahat ordered a urine toxicology screen and recommended that plaintiff begin to wean off narcotics. *Id*. The toxicology screen came back "essentially within normal limits." T. 478.

Plaintiff saw physicians assistant ("PA") Mark Siditsky on May 18, 2012. T. 433. Plaintiff reported that his left shoulder pain was radiating to his fingers and requested pain medications. *Id*. PA Siditsky ordered a myelgram and post-myelogram CT, which were performed on May 31, 2012 and showed minimal disc degeneration of the cervical and lumbar spines and slight bulging of the lumbar spine. T. 337-39. X-rays performed on May 31, 2012 showed a normal cervical spine and an intact lumbar spine with mild anterior compression at T11. T. 441-42.

Plaintiff was seen by PA Meredith Kyle at Dr. Mark's office on June 20, 2012. T. 443. He reported some improvement in his shoulder pain from a cortisone injection, but none from physical therapy or NSAIDs. *Id*. PA Kyle and Dr. Mark recommended shoulder surgery. *Id*.

Dr. Mark performed arthroscopic surgery on plaintiff's left shoulder on June 28, 2012. T. 454-60. Pre-operatively, Dr. Mark

assessed plaintiff with significant impingement syndrome and painful left shoulder. T. 453. Post-operatively, the diagnosis was severe adhesive capsulitis, chondromalacia, and impingement syndrome. *Id.* Plaintiff was discharged and given a prescription for Norco. T. 454-55. Plaintiff's incision healed well and he showed a much improved range of motion. T. 449. Dr. Mark recommended physical therapy to avoid further adhesive capsulitis, which plaintiff began on July 2, 2012. T. 450, 488. Against medical advice, plaintiff discontinued physical therapy on July 19, 2012, after eight sessions. T. 460, 486-88. Plaintiff told Dr. Mark that he had discontinued physical therapy because his insurance would not pay for it. T. 463-64. As of July 30, 2012, his condition had regressed. *Id.* Dr. Mark recommended that plaintiff appeal the insurance company's decision and begin a home exercise program. *Id.*

Plaintiff saw orthopedic surgeon Dr. Steven Lasser on August 14, 2012. T. 465-66. Dr. Lasser stated that plaintiff's myelogram and post-myelogram CT scans were essentially normal and that the imaging did not explain plaintiff's symptoms. T. 466. Dr. Lasser opined that plaintiff might have fibromyalgia and recommended that he seek employment that was not very physically demanding. *Id.*

Plaintiff saw Dr. Cummings on August 23, 2012. T. 505-506. Dr. Cummings diagnosed low back pain, chronic left shoulder pain, depression, and tobacco use. T. 506. She stated that plaintiff

might have fibromyalgia and that she "suspect[ed] that his depression is . . . making his pain tolerance a bit more unmanageable." *Id*.

On November 8, 2012, Dr. Cummings completed a Physical Residual Functional Capacity assessment for plaintiff. T. 471-74. Dr. Cummings diagnosed plaintiff with chronic lower back pain with disc bulges and L4-L5 and L5-S1, cervical disc herniation with neck pain, leg radiculopathy/sciatica, and cluster headaches. T. 471. She opined that plaintiff could occasionally lift less than ten pounds, could stand and/or walk for less than two hours in an eight hour workday, sometimes used a cane for stability, could sit for less than about six hours in an eight hour workday, would need to periodically alternate sitting and standing, was limited in pushing or pulling with his lower extremities, could occasionally climb ramps/stairs/ladders/ropes/scaffolds, occasionally stoop, frequently balance, crouch, crawl, and reach in all directions, and occasionally handle, finger, and feel. T. 471-72. Dr. Cummings noted no visual or communicative limitations, and recommended that plaintiff avoid moderate exposure to extreme cold or heat, wetness, and humidity, avoid concentrated exposure to gases and poor ventilation, and avoid all exposure to vibration and hazards such as machinery and heights. T. 473. Dr. Cummings stated that pain and fatigue were both major factors in plaintiff's ability to sustain activities of daily living and that he need to lie down for every ten to fifteen minutes of activity. *Id*. Dr. Cummings

further opined that plaintiff would be absent from work as a result of his impairments for more than four days per month. T. 474. She noted that "findings on testing appear mild" but stated that plaintiff's pain was severe and that she suspected he had pathology that was not visible on x-ray. T. 474.

**B. Non-medical evidence.**

Plaintiff was born on August 17, 1973, and was 39 years old on the date of the ALJ's decision. T. 9-28, 135. He received a high school diploma and underwent vocational training in the electrical field. T. 155-56. Plaintiff lived with his father. T. 188. In his DIB application, plaintiff reported that he had difficulty working, walking, sleeping, and lifting due to his pain. T. 188. Plaintiff could care for his hair, feed himself, and use the toilet, but had some difficulty dressing and showering. T. 188-89. He prepared his own meals in the microwave, did laundry, and cleaned his room without assistance. T. 190. He drove and rode in a car, shopped for food monthly, and did not do other house or yard work due to pain. T. 189-90. His hobbies included reading the Bible, watching television, listening to music, and playing video games, but he had to stop after thirty minutes due to pain. T. 191.

At the hearing before the ALJ, plaintiff testified that he experienced pain in his neck, lower back, and left shoulder. T. 37-38. He reported being able to lift a gallon of milk with his right arm, but claimed he could not lift even a piece of paper with

his left arm.  T. 41-50.  Plaintiff further testified that his pain medications lessened his pain from an8-9/10 to a 5-6/10, but also gave him dry mouth, constipation, headaches, and mental fogginess.  T. 51.  Plaintiff claimed that he could not drive, that he had headaches lasting six months, and that weather changes increased his pain and limited his mobility.  T. 49-51.  Plaintiff testified that there was no reason he could not be exposed to gases, fumes, or other irritants.  T. 47.

## II. The Commissioner's decision is supported by substantial evidence.

In his motion, plaintiff contends that the Commissioner's decision was not supported by substantial evidence because (1)the ALJ failed to accord controlling weight to the opinion of treating physician Dr. Cummings; (2) the ALJ failed to properly evaluate plaintiff's subjective complaints of pain and made a conclusory credibility finding; and (3) the ALJ failed to pose correct and complete hypothetical questions to the VE.  For the reasons discussed below, the Court finds that these arguments are without merit.

### A.    The ALJ did not violate the treating physician rule

The treating physician rule requires an ALJ to give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2);

*see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). However, an ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, so long as he sets forth the reasons for his determination. *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

In this case, the ALJ gave little weight to Dr. Cummings' opinion. T. 21-22. The ALJ found that Dr. Cummings' assessment of plaintiff's condition was unsupported by, and in fact in direct contradiction to, the objective medical evidence of record, including the April 2012 MRI that showed plaintiff's cervical spine to be in essentially normal condition. T. 21. The ALJ explained that "[Dr. Cummings'] conclusions regarding the claimant's physical capabilities are far more stringent than the medical evidence, including her own clinical observations[,] would suggest." T. 22.

The Court finds that the ALJ adequately articulated his reasons for affording less than controlling weight to Dr. Cummings' opinion. Dr. Cummings herself acknowledged that the findings on testing did not account for the severe pain plaintiff claimed to be suffering. T. 474; *see also* T. 322 ("I do know that unfortunately his past findings do not correlate with his physical objective findings."). This is consistent with the assessment of plaintiff's neurologist Dr. Rifai that "[t]here is no neurologic explanation

19

for [plaintiff's] pain and sensory symptoms" and that "[t]he possibility of somatization associated with depression should be considered." T. 256. Similarly, Dr. Durrani, a neurosurgeon, found that there was "no correlation between [plaintiff's] clinical and radiological picture," and that "it is possible there might be an underlying psychological issue we are not dealing with at this time." T. 260, 263. Orthopedic surgeon Dr. Lasser also observed that plaintiff did not have "any evidence of his spinal cord or . . . vertebral axis to explain his symptoms" and recommended that plaintiff "seek employment that is not very physical." T. 466. Finally, treating pain management physician Dr. Sabahat observed that plaintiff's cervical MRI was essentially normal and referred plaintiff for a toxicology urine screen. T. 479. The record thus reveals that virtually every physician who treated plaintiff observed that his claims of pain were unsupported by any diagnostic techniques, and that several physicians opined that plaintiff's pain was likely related to a psychological issue. In short, the ALJ's conclusion that Dr. Cummings' opinion was unsupported by the medical evidence of record was well-founded. *See, e.g., Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (ALJ is not required to give controlling weight to treating physician's opinion were "it was unsupported by the objective medical evidence" and "based on [the plaintiff's] subjective complaints").

**B.   The ALJ properly assessed plaintiff's subjective complaints and credibility**

Plaintiff also contends that the ALJ committed legal error in his assessment of plaintiff's subjective complaint of pain and that the ALJ's assessment of plaintiff's credibility was conclusory. The Court disagrees.

In determining whether a plaintiff is disabled, the ALJ considers "[the plaintiff's] symptoms and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). An ALJ will not reject a plaintiff's statements about the intensity and persistence of pain or other symptoms "solely because the available objective medical evidence does not substantiate [his or her] statements." 20 C.F.R. § 404.1529(c)(2). "If a claimant's contentions are not supported by objective medical evidence," the ALJ considers the following factors in assessing the plaintiff's credibility: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *Hughes v. Colvin*, 2017 WL 1088259, at *4 (W.D.N.Y.

Mar. 23, 2017).  "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence."  *Id.*  (internal quotations omitted).

In this case, the ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC.  T. 16.  The ALJ explained that plaintiff's physicians had offered him only conservative treatments, likely due to the lack of documented strongly clinical physical signs. T. 23.  The ALJ further noted that plaintiff's claims regarding his physical limitations, including that he was incapable of lifting even a piece of paper with his left hand, were inconsistent with his admitted activities of daily living.  Finally, the ALJ observed that plaintiff's claim that his drug and alcohol problems were unrelated to his having ceased employment was inconsistent with his having reported to Dr. Cummings in 2010 that his drug and alcohol problems were threatening his employment.  T. 23. Plaintiff's medical record does in fact contain numerous instances where plaintiff reported employment issues prior to experiencing his current symptoms.  *See, e.g.,* T. 202-03, 300, 301.

"The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an

independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" *Young v. Astrue*, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). If an ALJ rejects a plaintiff's subjective complaints of pain, he must do so with "with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Id*. (internal quotation omitted). The ALJ in this case has done so, pointing to multiple legitimate reasons for his assessment of plaintiff's credibility. As a result, the Court finds that the ALJ's assessment of plaintiff's credibility was free from legal error and adequately supported by the evidence.

### C. The ALJ appropriately questioned the VE

Plaintiff's final argument is that the ALJ failed to pose appropriate hypothetical questions to the VE. In support of this claim, plaintiff contends that "the hypothetical in this case was posed as a full range of sedentary. . . ." Docket No. 9 at 14. A review of the hearing transcript shows that plaintiff is incorrect. The ALJ posed a hypothetical to the VE that included the restrictions set forth in the RFC. *See* T. 55-57. To the extent that plaintiff contends that the ALJ's questioning was inappropriate because it was inconsistent with the restrictions set forth by Dr. Cummings, the Court has already concluded, for the reasons discussed above, that the ALJ properly afforded

Dr. Cummings' opinion less than controlling weight. As a result, plaintiff's arguments based on the ALJ's hypothetical questions are without merit.

For the reasons set forth above, and upon its review of the record in its entirety, this Court finds that the record contains substantial evidence to support the ALJ's determination. As a result, the Court upholds the Commissioner's final decision.

## CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings (Docket No. 13) is granted, and plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied. The complaint is dismissed in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
May 30, 2017